**No. 25-1520**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

RASHA B. TALAFHAH,
*Plaintiff-Appellant*,

v.

ROBERT ALLISON and
WEXFORD HEALTH SOURCES, INC.,
*Defendants-Appellees.*

Appeal from a Judgment of the Central District of Illinois
The Honorable Colleen R. Lawless
Case No. 1:19-cv-01065

# APPELLANT'S REPLY BRIEF


Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 N. Sheridan
Chicago, IL 60640
(773) 250-0353

Sarah E. Jones
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

Michael Rayfield
SHOOK, HARDY & BACON LLP
1 Rockefeller Plaza, Suite 2801
New York, NY 10020
(212) 779-6110

Andrew L. Franklin
SHOOK, HARDY & BACON LLP
1800 K Street, N.W., Suite 1000
Washington, DC 20006
(202) 783-8400

*Counsel for Plaintiff-Appellant*

Save As Clear Form



**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1520

Short Caption: Talafhah v. Allison

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Rasha Talafhah

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Shook Hardy Bacon , Uptown People's Law Center

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: s/ Nicole Schult Date: May 19, 2025

Attorney's Printed Name: Nicole Schult

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Uptown People's Law Center

4413 N Sheridan, Chicago, IL 60640

Phone Number: 773-769-1411 Fax Number: 773-769-2224

E-Mail Address: nicole@uplcchicago.org

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1520

Short Caption: Rasha Talafhah v. Robert Allison and Wexford Health Sources, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Rasha Talafhah

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Shook, Hardy & Bacon L.L.P., Uptown People's Law Center, Mayer Brown LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: [signature] Date: May 21, 2026

Attorney's Printed Name: Sarah E. Jones

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 2555 Grand Boulevard

Phone Number: 816 474 6550 Fax Number: 816 421 5547

E-Mail Address: sejones@shb.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1520

Short Caption: Rasha Talafhah v. Robert Allison, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellant Rasha Talafhah

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Shook, Hardy & Bacon L.L.P.

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/ Michael Rayfield Date: 7/30/2026

Attorney's Printed Name: Michael Rayfield

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 1 Rockefeller Plaza, Suite 2801

New York, New York 10020

Phone Number: 212-989-8844 Fax Number: 716-919-6155

E-Mail Address: mrayfield@shb.com

Save As Clear Form



# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1520

Short Caption: Rasha Talafhah v. Robert Allison, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Plaintiff-Appellant Rasha Talafhah

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Shook, Hardy & Bacon LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/Andrew L. Franklin Date: 8/4/2026

Attorney's Printed Name: Andrew L. Franklin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: 1800 K Street, N.W., Suite 1000

Washington, DC 20006

Phone Number: (202) 783-8400 Fax Number: (202) 783-4211

E-Mail Address: afranklin@shb.com

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. Talafhah is entitled to judgment on her claims for medical battery and respondeat superior. .......... 3

  A. Talafhah preserved her arguments on medical battery. .......... 3

  B. No reasonable jury could have found for Allison on the elements of medical battery. .......... 6

    1. Allison's touching was harmful. .......... 6

    2. Allison's touching was offensive. .......... 8

  C. No reasonable jury could have found the emergency exception applicable in this case. .......... 11

II. The district court incorrectly instructed the jury on the elements of the emergency exception. .......... 14

  A. Talafhah preserved her instructional argument. .......... 14

  B. The district court's instruction was incomplete. .......... 16

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Nelsen*,
2023 IL App (4th) 220801 .......... 7

*Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*,
719 F.2d 1335 (7th Cir. 1983) .......... 15

*Cohen v. Smith*,
269 Ill. App. 3d 1087 (1995) .......... 8, 9, 10

*Cooper v. Retrieval-Masters Creditors Bureau, Inc.*,
42 F.4th 675 (7th Cir. 2022) .......... 5

*Curtis v. Jaskey*,
326 Ill. App. 3d 90 (2001) .......... 17

*Fuesting v. Zimmer, Inc.*,
448 F.3d 936 (7th Cir. 2006) .......... 15

*Gaskin v. Goldwasser*,
166 Ill. App. 3d 996 (1988) .......... 9

*Gragg v. Calandra*,
297 Ill. App. 3d 639 (1998) .......... 9

*Jackson v. City of Madison*,
176 F.4th 1005 (7th Cir. 2026) .......... 6

*Lucas v. Dep't of Corr.*,
2012 IL App (4th) 110004 (2012) .......... 14

*Mahran v. Advocate Christ Medical Center*,
12 F.4th 708 (7th Cir. 2021) .......... 5

*Moriarity v. Rockford Health Systems*,
365 Ill. App. 3d 378 (2006) .......... 12, 16, 17

*Pratt v. Davis*,
224 Ill. 300 (1906) .......... 17

*Rainey v. Taylor*,
941 F.3d 243 (7th Cir. 2019) ....................................................................7

*Sekerez v. Rush Univ. Med. Ctr.*,
2011 IL App (1st) 090889 (2011)..............................................................17

*Smith v. RecordQuest, LLC*,
989 F.3d 513 (7th Cir. 2021) ....................................................................17

*Teva Pharms. USA, Inc. v. Eli Lilly & Co.*,
181 F.4th 756 (7th Cir. 2026) ..............................................................1, 4, 5

*United States v. Billups*,
536 F.3d 574 (7th Cir. 2008) ......................................................................5

*United States v. Otradovec*,
72 F.4th 794 (7th Cir. 2023) .......................................................................5

*Yee v. City of Escondido*,
503 U.S. 519 (1992)...................................................................................4

**Statutes, regulations, and rules**

20 Ill. Admin. Code § 501.220(b)(3) ...............................................................10, 13

Fed. R. Civ. P. 59 .............................................................................................15

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE
§ 2540 (3d ed. 2026) ........................................................................................15

## INTRODUCTION

Rules and procedures exist for challenging situations. Robert Allison ran roughshod over Rasha Talafhah's bodily autonomy and the Illinois Administrative Code when he intentionally manipulated her external genitalia, including her labia and clitoris, over her emphatic objection and without authority from Logan's warden. Any reasonable jury would have found that this contact was a "harmful or offensive touching," and that Allison was therefore liable for medical battery.

Because the defendants have little to say on the substance, their brief argues primarily that Talafhah has somehow forfeited or waived nearly every point on appeal. That is wrong. Talafhah fairly raised all of her appellate arguments below and in the opening brief. But in any event, defendants ignore a well-established rule of appellate preservation. "Once a *claim* is properly presented, a party can make *any argument* in support of that claim; parties are not limited to the precise arguments they made below." *Teva Pharms. USA, Inc. v. Eli Lilly & Co.*, 181 F.4th 756, 763 (7th Cir. 2026) (emphases added) (alteration omitted). There is no dispute that Talafhah properly presented her medical battery claim and addressed each of its elements. Nothing was waived.

Defendants fare no better on the merits. In their telling, a reasonable jury could have found that Talafhah was not harmed or offended because she "could have stopped the search at any time by relinquishing possession of the contraband," and

"knew a vaginal cavity exam would occur if she did not." That is both untrue and irrelevant. It is untrue because, after Talafhah told her psychiatrist about prior cavity searches that had been conducted *with* her consent, the psychiatrist told her she could refuse them; so she did. The argument is irrelevant because Talafhah had every right to reject the cavity search even if she knew it could happen; that is what the rules are for. Talafhah testified at trial, without rebuttal, about the harm and offense she suffered when Allison unilaterally disregarded those rules.

Defendants argue that Allison was allowed to nullify Talafhah's decision because there was an "emergency." No reasonable jury would have agreed with this argument (even using the district court's flawed instruction) because there was no emergency under Illinois law and it was neither impossible nor impracticable to obtain consent from Talafhah or someone authorized to consent for her. Everyone agrees that there was such a person: the warden.

Meanwhile, defendants never seriously dispute that the district court's instruction on the emergency exception is inconsistent with Illinois common law. Instead, they argue that the "correctional" setting "is one of those 'unusual circumstances' where consent may sometimes be overridden." They cite nothing for this proposition, and it is irreconcilable with their position that Allison was performing a traditional medical examination rather than a cavity search.

The Court should reverse the judgment and remand for a damages-only retrial.

## ARGUMENT[1]

### I. Talafhah is entitled to judgment on her claims for medical battery and respondeat superior.

#### A. Talafhah preserved her arguments on medical battery.

At trial, the only disputed element of Talafhah's medical battery claim was whether Allison's "touching was harmful or offensive." SA29; A1206; *see* OB25-27. Talafhah's opening brief argued that no reasonable jury could have found in favor of defendants on this element. OB27-29. Defendants begin their response with a pair of misguided waiver arguments.

First, defendants contend that Talafhah's "only argument" below on this element of battery was "that touching external genitalia would be considered offensive to any reasonable person," and that Talafhah "failed to raise this same argument" on appeal. RB36-37. This argument is puzzling. If defendants are suggesting that Talafhah did not use the exact words on appeal that she did in the district court, there is no such requirement. But regardless, Talafhah did make the argument, nearly verbatim, numerous times. *See, e.g.*, OB5 (first issue presented for review: "Whether Talafhah is entitled to judgment on her claims for medical battery and respondeat superior because the undisputed evidence shows that Allison touched

---

[1] "OB__" refers to Talafhah's opening brief. "RB__" refers to defendants' response brief. All other citations conform to the conventions in the opening brief. *See* OB5 n.1.

Talafhah's genitalia, including her labia and clitoris, without her consent."); OB2 (listing the elements of medical battery and arguing that "Allison admitted at trial that he intentionally searched Talafhah; that he touched Talafhah's 'groin area,' 'external genitalia,' 'clitoris,' and 'labia'; and that Talafhah did not consent" (emphasis omitted)); OB24 ("No reasonable jury could have found for Allison on the elements of medical battery. It is undisputed that Allison intentionally touched Talafhah's genitalia without her consent."). Talafhah also responded directly to the district court's contrary conclusion, including its rationale that "a reasonable jury could have found that 'any contact with Plaintiff Talafhah was unintentional and resulted from her refusal to stay still.'" OB27-29 (quoting SA54).

Defendants argue next that Talafhah waived several arguments "as to why Allison's conduct was considered harmful or offensive," including "the fact that a contact can qualify as medical battery if it is either harmful or offensive." RB38 (quotation marks and emphasis omitted). That is also wrong. Both this Court and the Supreme Court have long held that, "[o]nce a *claim* is properly presented, a party can make *any argument* in support of that claim; parties are not limited to the precise arguments they made below." *Teva Pharms. USA, Inc. v. Eli Lilly & Co.*, 181 F.4th 756, 763 (7th Cir. 2026) (emphases added) (alteration omitted) (citing *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)). Defendants do not dispute that Talafhah presented her medical battery claim in the district court and argued at length that

Allison's touching satisfied the "harmful or offensive" element of that claim. *See, e.g.*, A1172 ("harmful or offensive touching . . . is not in reasonable dispute"). "[N]o rule prohibits appellate amplification of a properly preserved issue." *Teva*, 181 F.4th at 763 (appellant did not waive various arguments on a breach of contract claim, supported by new theories and legal authorities, because it "properly presented its breach-of-contract claim in the district court"); *see also United States v. Otradovec*, 72 F.4th 794, 796 (7th Cir. 2023) (allowing appellant to "articulate" a "definition of indigency" that he did not present below: "Nothing prevents Otradovec from amplifying and elaborating on appeal a properly preserved argument."); *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008) ("[Appellant]'s challenge below was sufficient to preserve his current argument, even if he offers a new twist on that argument based upon additional authority on appeal.").

The cases cited by defendants (RB37-38) do not support their position. In *Mahran v. Advocate Christ Medical Center*, 12 F.4th 708 (7th Cir. 2021), the appellant "reverse[d] course" on an argument he had made in the district court, "adopting the *opposite* position" on appeal. *Id.* at 713 (emphasis added). This Court's decision in *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675 (7th Cir. 2022), did not involve an appeal of a claim (and therefore did not implicate the *Teva/Yee* rule); it involved an appeal of an attorneys' fee award where the appellant relied on a local rule that he had not cited below. *Id.* at 688. And in

*Jackson v. City of Madison*, 176 F.4th 1005 (7th Cir. 2026), the appellant raised "new factual and evidentiary arguments," including that various defendants "fabricated [] police reports." *Id.* at 1018. These cases are nothing like this one. Talafhah is not taking a position that is inconsistent with one she asserted below, or introducing new rules or facts not presented to the jury. At most, she is presenting the same basic claim from different angles. Her arguments are all preserved.

**B. No reasonable jury could have found for Allison on the elements of medical battery.**

Any reasonable jury would have found that Allison's search was both "harmful" and "offensive," and either finding was independently sufficient on the only disputed element of medical battery. Defendants' responses lack merit.[2]

**1. Allison's touching was harmful.**

Talafhah testified without rebuttal that she suffered harm from Allison's touching and continues to experience that harm to this day, in the form of panic attacks, flashbacks, anxiety, and an innate fear of receiving medical treatment. OB16-17, 27. Defendants argue that "the jury heard substantial evidence that Talafhah was not harmed," such as Allison's testimony that "he never penetrated" Talafhah's vagina and the fact that "Talafhah could have prevented the exam from

---

2 The parties appear to agree that Wexford's liability for respondeat superior rises and falls with Allison's liability. OB33-34; RB54.

happening." RB41-42. This evidence does not advance the defendants' position. Regardless of the extent of Allison's search and whether Talafhah could somehow have stopped it, Talafhah was the only witness who testified about whether she was *harmed*. If defendants wanted to dispute that testimony, they could have called their own witness—they could, for example, have reviewed Talafhah's medical history in the years following the cavity search. They chose not to.

Defendants contend next that "a lay juror would have benefitted from the assistance of an expert to evaluate [the] true impact [of Allison's conduct] given Talafhah's history of severe mental illness." RB43. Defendants cite no authority for the proposition that expert testimony is required to establish harms like emotional distress. The law in Illinois is just the opposite. *See, e.g.*, *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019) ("Illinois doesn't require expert testimony to establish [emotional distress] damages. The absence of medical testimony does not preclude recovery for emotional distress." (citation omitted)); *Anderson v. Nelsen*, 2023 IL App (4th) 220801, ¶¶ 98-107 (affirming $1.5 million award of emotional distress damages based on plaintiff's testimony that "he felt betrayed and disappointed when he learned" his business partner had been siphoning money). Talafhah was more than capable of relaying her own injuries. And there was other evidence as well. Among other things, Talafhah screamed "Stop hurting me!" while the search was

occurring, and she was put on suicide watch after the search, whereas she "appeared to be fairly normal" that morning. VA2 at 7:59-8:22; A249-50, 1032-33.

Straining further, defendants say that Talafhah is "essentially arguing the jury must always accept the plaintiff's version of events." RB42-43. Not at all. A jury can reasonably reject a plaintiff's testimony when there is evidence in the record that contradicts it, or if the testimony is materially undermined by cross-examination. But here, defendants presented nothing to rebut Talafhah's harm-related testimony and they did not cross-examine her on that subject. Under these circumstances, any reasonable jury would find that Allison's contact was harmful.[3]

#### 2. Allison's touching was offensive.

Our position on the offensiveness prong is straightforward: touching a woman's genitals, without her consent, while she is screaming in protest and being restrained by four officers, is offensive. In fact, the bar in Illinois is much lower than that. "Offensive contact is said to occur when the contact offends a reasonable sense of personal dignity. . . . Consequently, the defendant is liable not only for contacts which do actual physical harm, but also for those *relatively trivial ones* which are merely offensive and insulting." *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090-91

---

[3] Defendants also point to testimony that other witnesses—Anthony Riss and Ashlee Heinzel—gave about the extent of Allison's search. RB41-42. Neither witness had any ability to observe the portions of Talafhah's body that Allison touched; Riss was not even in the room at the time.

(1995) (emphasis added) (quotation marks omitted). In *Cohen*, for example, a religious hospital patient alleged that a male nurse had touched her naked body during a caesarean section, after she had informed the hospital that her religious beliefs prohibited such contact. *Id*. at 1088. The Illinois Appellate Court reversed the dismissal of the plaintiff's battery claim, explaining that the "[k]nowing interference with the right of [bodily] determination is battery." *Id.* at 1095. If that was true in *Cohen*, it is all the more true here.

Defendants nonetheless argue that Allison's search was not offensive because he "intended . . . to protect an inmate with known suicidal tendencies from self-harm." RB44. Allison's reasons for conducting the search, however, are irrelevant. As the district court instructed the jury, the "intent" element of medical battery required Talafhah only to prove that "Allison intended to *touch . . . Talafhah's body*." A1206 (emphasis added). "It is not the hostile intent of the defendant but rather the absence of consent by the plaintiff that is at the core of an action for battery." *Gragg v. Calandra*, 297 Ill. App. 3d 639, 645 (1998) (citing *Gaskin v. Goldwasser*, 166 Ill. App. 3d 996, 1012 (1988)). If the rule were otherwise, *Cohen* would have been decided differently; after all, the batterer in that case was a nurse assisting with childbirth who presumably had the plaintiff's health in mind. 269 Ill. App. 3d at 1089. But the relevant perspective was the plaintiff's, not the defendant's. *See id.* at 1092 (rejecting the defendant's argument that the contact was

not a battery because it "took place in a hospital between a medical professional and a patient").

Defendants contend next that "a reasonable jury . . . could have interpreted Talafhah's refusal to comply as an indication she was concealing contraband she admittedly 'desperately' wanted to trade for extra food." RB44. That argument is remarkable—the suggestion being that Talafhah would have been perfectly comfortable with a cavity search if she was not hiding three small copper wires inside of her. Nothing in the record supports that theory. But even if it were correct, it would have no bearing on the outcome. Talafhah's motives for refusing the search, like Allison's motives for performing the search, are not important to the "offensive" element of a medical battery claim. What matters is whether there was an "interference" with Talafhah's bodily autonomy. *Cohen*, 269 Ill. App. 3d at 1095.

Throughout their brief, defendants repeatedly argue that "if Talafhah genuinely wanted to avoid the 'harm' or 'offense' of Allison's search, she only had to give up the contraband." RB45. That is a false choice, no more meaningful than if Allison had forced Talafhah to "give up the contraband" at gunpoint. Whether or not Talafhah could have avoided the search—which is far from clear, because it would have required her to personally extract the copper wires from her vagina in front of several officers—the Illinois Administrative Code forbade unauthorized forced cavity searches. *See* 20 Ill. Admin. Code § 501.220(b)(3) ("If the committed

person does not consent to an intrusive cavity search, the search may only be performed upon the approval of the Chief Administrative Officer, in consultation with the center physician or the Agency Medical Director.”). It is no surprise, then, that such searches were apparently unprecedented at Logan. A354, A624-25.

Finally, defendants offer no plausible response to Talafhah’s alternative argument: that even if (contrary to the record) Talafhah’s behavior justified some kind of forced search, the manner of the search was indefensible. OB29. Rather than employing the medical devices he had previously used when examining Talafhah (like a speculum), Allison ordered four officers to restrain Talafhah, had her knees spread apart, and then rooted blindly around Talafhah’s genitalia. *See* VA2 at 6:33-8:22; A243-45, 536, 584-85, 901-02. Defendants respond that “Allison felt he needed to act” and that the “[u]se of a speculum would have required Talafhah to take off her jumpsuit,” which “was not going to happen” “[g]iven her complete lack of cooperation.” RB45. Of course, if Allison was willing and able to perform a forced cavity search, he could certainly have forced Talafhah to take off her jumpsuit and set up a speculum. But Allison did not even try to remove Talafhah’s jumpsuit; he simply went ahead and performed the search using the crudest means imaginable.

### C. No reasonable jury could have found the emergency exception applicable in this case.

Talafhah’s opening brief argued that, setting aside whether the jury was properly instructed on the emergency exception, no reasonable jury could have

found that the exception applied, both because (i) there was no emergency under Illinois law; and (ii) it was neither impossible nor impracticable to obtain consent on Talafhah's behalf from someone with authority to do so. OB30-33.

Defendants do not contend that this case is anything like *Moriarity v. Rockford Health Systems*, 365 Ill. App. 3d 378 (2006), one of the few Illinois cases that have recognized the emergency exception. *See id.* at 379, 382, 389 (doctor was attempting "to determine the existence of a potentially fatal drug interaction," the plaintiff was "unresponsive[] and violent," and there was a risk she would "los[e] consciousness and los[e] control of her airway"). Instead, defendants cite Dr. Fowlkes's testimony that Talafhah was a "high-risk patient for committing suicide," and that her "decision to call for a mental health crisis that very morning was hardly benign." RB49. This argument is a red herring. Defendants cannot credibly contend that Allison's search was justified by Talafhah's crisis call; Allison was responding to reports that Talafhah had "foreign bodies" inside her. A604. In fact, when Talafhah made the crisis call, she told a mental health professional that she was "not going to hurt myself" and the professional reported that Talafhah was "fairly normal." A1032-33. Yet by defendants' logic, Allison could operate as though Talafhah was in a *constant* state of emergency because of her suicidal tendencies.

In any event, the district court instructed the jury that it could apply the emergency exception only if it was "impossible or impracticable to obtain consent

either from the patient or from someone authorized to consent for her." SA30; A1207. There was no evidence that Talafhah was incompetent to give consent; Dr. Fowlkes conceded otherwise. A1055-56. And it is undisputed that Allison did not seek approval from Logan's warden, a person "authorized to consent" on Talafhah's behalf under the Illinois Administrative Code. 20 Ill. Admin. Code § 501.220(b)(3).

Defendants barely engage with this point. Their main response is that "the jury heard testimony from *officer Riss* that [Section 501.220(b)(3)] applies in the security context, not medical context." RB49-50 (emphasis added). It should go without saying that Riss's reading of the statute does not control. And the statute draws no distinction between "security" and "medical" searches. Meanwhile, Allison did not actually treat the search as a medical exam; he did not ask Talafhah if she had any symptoms, he did not use medical devices, he did not make a record of the search, and he declined to consult with anyone because he "assumed that the TACT team had *done their job*." A567-68 (emphasis added); *see* A576-77, 602, 901.

Next, defendants say that "Allison . . . was not trained to follow regulation § 501.220(b)(3)" and instead "was trained on IDOC Administrative Directive 04.03.101, which permitted him to perform intrusive physical examinations due to security concerns that are medically indicated." RB50. Regardless of how Allison was "trained," the fact remains that Section 501.220(b)(3) authorized the warden to consent to invasive searches on Talafhah's behalf, and that is what matters under the

emergency exception. The IDOC directive is not inconsistent with, nor can it supersede, the Illinois Administrative Code. *See Lucas v. Dep't of Corr.*, 2012 IL App (4th) 110004, ¶ 14 (2012) ("It is true that administrative rules have the force of law, but administrative directives are not administrative rules."). Frankly, it is ironic that defendants would even rely on the directive: that provision expressly applies only in the "security" context. *See* Ill. Admin. Directive § 04.03.101(II)(G)(2)(c)(3).

Under any reasonable view of the evidence, Allison committed medical battery. The Court should therefore reverse the judgment on both medical battery and respondeat superior, and remand for a new trial on damages.

## II. The district court incorrectly instructed the jury on the elements of the emergency exception.

Talafhah argued in the alternative that a new trial is necessary because the trial court's instruction on the emergency exception was incomplete; the exception has four elements and the district court only provided the jury with three. OB34-36. Defendants' responses are again meritless.

### A. Talafhah preserved her instructional argument.

Defendants insist, with heavy emphasis, that "Talafhah *never requested a new trial in district court*" on liability and "only requested a new trial *on damages* if the district court granted judgment as a matter of law." RB45-46 (emphases in original). That is just wrong. Talafhah asked for both of those remedies in the alternative:

> The Court should grant plaintiff judgment as a matter of law on her claims for medical battery and respondeat superior. If the Court grants plaintiff judgment on those two claims, it should order a new trial on damages, where the jury is instructed that (i) both defendants are liable for medical battery; (ii) the jury must award compensatory damages; and (iii) it must consider whether to award punitive damages against both defendants. *If the Court declines to grant plaintiff judgment on her medical battery claim, it should order a new trial on that claim in which the jury is not given the emergency-exception instruction.*

Dkt. 195 at 8 (emphasis added).

That said, Talafhah was not actually required to seek a new trial on the instructional error. In a "case involving jury instruction error, a motion for a new trial under Fed. R. Civ. P. 59 is not a prerequisite to an appeal." *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 940 (7th Cir. 2006) (quotation marks omitted); *see also Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1349 n.24 (7th Cir. 1983) ("A party need not move for a new trial challenging [instructional] errors as a prerequisite to appeal."); WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2540 (3d ed. 2026) ("If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial.").

### B. The district court's instruction was incomplete.

Defendants do not dispute that the district court's instruction omitted an element recognized in several Illinois Appellate Court decisions: that there is "no reason to believe that the patient would decline the treatment, given the opportunity to consent." *Moriarity*, 365 Ill. App. 3d at 386 ("there are four essential elements required to establish the common-law emergency exception"). Nor do they argue that they satisfied this element; there was, in fact, *every* "reason to believe that [Talafhah] would decline" Allison's search, because that is exactly what she did.

Defendants instead point out that the district court relied on a pattern instruction, and that the "Illinois Supreme Court Rules emphasize a strong desire to use Illinois pattern instructions over non-pattern instructions unless the trial court determines a pattern instruction contains an inaccurate statement." RB53. Both of those things are true, but they do not justify the decision below. The district court relied on a pattern instruction that applies to "Professional Negligence" claims. *See* IPI Civil No. 105.00, *available at* https://tinyurl.com/2u7ejtmd ("The jury instructions in the 105.00 series deal with negligence actions brought against professionals, including doctors, dentists, attorneys, architects and others."); IPI Civil No. 150.07 (exception). Defendants cite no case applying this instruction in the context of medical battery.

To the extent that the committee intended the instruction to apply to medical battery, we respectfully submit that this approach requires an update. The pattern cites only one case, from 1906, that does not say anything one way or another about the issue addressed in *Moriarity*. *See Pratt v. Davis*, 224 Ill. 300, 309-10 (1906). And in the last two decades, at least three Illinois appellate decisions have recognized the fourth prong of the emergency exception. *Moriarity*, 365 Ill. App. 3d at 386; *Sekerez v. Rush Univ. Med. Ctr.*, 2011 IL App (1st) 090889, ¶ 52 (2011); *Curtis v. Jaskey*, 326 Ill. App. 3d 90, 97 (2001). There is no "convincing reason to predict" that the Illinois Supreme Court "would disagree" with those precedents. *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517 (7th Cir. 2021).

Turning to a familiar refrain, defendants argue that "the correctional healthcare context is one of those 'unusual circumstances' where consent may sometimes be overridden." RB52 (quotation marks omitted). But their only citation is *Curtis*, and they concede that "the example of an unusual circumstance provided by the court in *Curtis* is not applicable here." RB51; *see Curtis*, 326 Ill. App. 3d at 97 (discussing cases where "circumstances could change so as to raise a question regarding whether an individual would persist in a refusal"). Indeed, the *Curtis* court noted that "[t]he trial court *relied on IPI 105.07* in reaching its decision," and held that this reliance was incorrect. 326 Ill. App. 3d at 94 (emphasis added).

There is no reason to abandon the fourth element simply because Allison's search happened in a prison. Ultimately, defendants are trying to have it both ways. On the one hand, they contend that Allison was performing a medical procedure, not a security-based cavity search. RB49-50. On the other hand, they want a special rule for "emergencies" that take place in a "correctional" setting. RB52. The far more sensible approach—and the one required by Illinois appellate cases—is this: when a medical professional claims to be providing healthcare, he is bound by the principles that govern healthcare providers.

Finally, defendants argue that "Talafhah cannot show prejudice" from the district court's instruction. RB53 (initial caps omitted). Yes she can. During their closing arguments, defendants expressly relied on the emergency exception for the proposition that Allison was justified in searching Talafhah without her consent. *See* A1273-74 ("Now, the question of consent. Plaintiff has said there's no imminent harm; there's no medical need. *There's an emergency exception* to the issue of—to the element for consent, and it says that you must obtain consent unless there is an emergency." (emphasis added)). If the district court had provided the jury with the fourth element of the exception, defendants could not have made that argument with a straight face. They insisted on the omission and they are stuck with it.

## CONCLUSION

This Court should reverse the judgment in part, direct the district court to enter judgment in Talafhah's favor on her medical battery and respondeat superior claims, and remand for a retrial limited to the appropriate amount of compensatory and punitive damages for those claims. In the alternative, if the Court agrees that the district court's instruction was wrong, it should vacate the judgment in part and remand for a new trial on the medical battery and respondeat superior claims.

Dated: August 27, 2026

Respectfully submitted,

*/s/ Sarah E. Jones*
Sarah E. Jones
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550
sejones@shb.com

Michael Rayfield
SHOOK, HARDY & BACON LLP
1 Rockefeller Plaza, Suite 2801
New York, NY 10020
(212) 779-6110
mrayfield@shb.com

Andrew L. Franklin
SHOOK, HARDY & BACON LLP
1800 K Street, N.W., Suite 1000
Washington, DC 20006
(202) 783-8400
afranklin@shb.com

Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 N. Sheridan
Chicago, IL 60640
(773) 250-0353
nicole@uplcchicago.org

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32

Under Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief:

1. Complies with the type-volume limitation of Rule 32(a)(7)(B), as modified by Circuit Rule 32, because it contains 4,434 words, including footnotes and excluding the parts exempted by Rule 32(f); and

2. Complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6), as modified by Circuit Rule 32, because it has been prepared using Microsoft Office Word 2016 and is set in Times New Roman font, size 14 points.

Dated: August 27, 2026

/s/ *Sarah E. Jones*
Sarah E. Jones
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550
sejones@shb.com

## CERTIFICATE OF SERVICE

I certify that on August 27, 2026, this brief was served via the Court's CM/ECF system upon all counsel of record.

Dated: August 27, 2026

/s/ *Sarah E. Jones*
Sarah E. Jones
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550
sejones@shb.com